COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Annunziata and Overton


DEANGELA CONNER

MEMORANDUM OPINION[*]
v.   Record No. 0460-98-4                      PER CURIAM
SEPTEMBER 8, 1998

ARLINGTON COUNTY DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Benjamin N.A. Kendrick, Judge

(Denman A. Rucker; Rucker & Rucker, on
brief), for appellant.

(Mary E. Craig, Assistant County Attorney, on
brief), for appellee.


DeAngela Conner (mother) appeals the decision of the circuit
court terminating her residual parental rights to her son,
Derrick.  The circuit court found that the Arlington County
Department of Social Services (DSS) presented clear and
convincing evidence sufficient under Code § 16.1-283(B) and (C)
to support its petition to terminate mother's parental rights.
On appeal, mother contends that the trial court erred in finding
the evidence sufficient under the statute because the child did
not face a serious and substantial threat to his life, health,
and development; he could be safely returned to mother within a
reasonable period of time; and mother was willing and able to
remedy the conditions which led to the child's foster care

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

placement.  Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit.  Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Development, 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

> "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests."  The trial court's judgment, "when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly wrong or without evidence to support it."

Id. (citations omitted).  "Code § 16.1-283 embodies 'the statutory scheme for the . . . termination of residual parental rights in this Commonwealth' [which] . . . 'provides detailed procedures designed to protect the rights of the parents and their child,' balancing their interests while seeking to preserve the family."  Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995) (citations omitted).

Code § 16.1-283(B) provides that the residual parental rights of a parent of a child found by the court to be neglected or abused may be terminated if the court finds that it is in the child's best interests, that the neglect or abuse presents a serious and substantial threat to the child's life, health or

development, and that it is not reasonably likely that the conditions resulting in the neglect or abuse can be substantially corrected or eliminated to allow the child's safe return within a reasonable period of time.  See Code § 16.1-283(B)(1) and (2).

Code § 16.1-283(C) provides that the residual parental rights of a child placed in foster care may be terminated if the trial court finds it is in the best interests of the child and, in pertinent part,

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period not to exceed twelve months to remedy substantially the conditions which led to the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

The child was placed in foster care as a result of mother's arrest for shoplifting.  The child was with mother at the time of her arrest.  At the time Derrick came into foster care, he could not read, write, or recognize numbers, although he was eight years old; he used an alias and was trained to lie and steal by mother; and he suffered from personality and emotional problems.  He was emotionally detached, and lacked a sense of stability. Prior to the time the child was placed in foster care, he and mother did not have stable housing.  They sometimes stayed in hotels, where the child was locked in the bathroom as mother "dated" men for money.  The child also reported to his social

worker that they slept under bushes.

The evidence also demonstrated that mother did not cooperate with therapy for herself or work with the counselors and school personnel seeking to provide assistance to her child. Mother visited the child, but failed to use the visits to interact positively with the child. Mother examined the child looking for rashes and injuries, then argued with the supervising social workers. Mother often complained that she had other things to do during visitation or got angry and left early. After visits with mother, the child's negative behaviors, such as stealing and lying, would increase. Mother failed to attend family counseling sessions. She was combative with DSS personnel and failed to demonstrate an understanding of her son's needs.

The trial court found that the child was neglected and abused; that the neglect and abuse presented a serious and substantial threat to his life, health and development; that it was not reasonably likely that the conditions which resulted in the neglect and abuse could be substantially corrected within a reasonable period of time, despite the reasonable and appropriate efforts of DSS; and that it was in the best interests of the child to terminate mother's parental rights.

Credible evidence supported the trial court's determination that the child was neglected and abused. While in mother's care, the child learned to steal and lie. He was educationally delayed and emotionally disturbed. The family lacked a stable residence.

Credible evidence also supported the trial court's finding that the underlying conditions could not be corrected within a reasonable period of time.  Over the course of three years, mother failed to work with those seeking to assist the child.  She did not, or could not, place his needs above her own anger and resentment towards DSS.  She delayed signing his instructional plan and minimized his educational and emotional problems.  She criticized his foster home, insinuating that he was not being cared for properly.  Mother failed to appreciate the seriousness of his problems with stealing and lying and repeatedly modeled these same behaviors before the child.  Finally, DSS presented clear and convincing evidence that it was in the best interests of the child to terminate mother's parental rights.  While there was some evidence that any termination causes difficulty for a child, the specific evidence also demonstrated that the child was cared for properly while in foster care, that his needs were being addressed, and that his behavior was improving.

Therefore, the trial court's determination that DSS met the statutory requirements of Code § 16.1-283 to terminate mother's parental rights was not plainly wrong or lacking in evidence to support it.  Accordingly, the decision of the circuit court is summarily affirmed.

Affirmed.